## CLEVENGER v. STATE OF INDIANA.

[No. 23,514.   Filed November 26, 1919.]

1. CRIMINAL LAW.—*Affidavit.*—*Bribery.*—*Words Descriptio Personae.*—An affidavit under §2425 Burns 1914, Acts 1905 p. 584, §519, relating to bribery of public officials, charging that a township trustee entered into a contract with the defendant, "agent of" a named company, was not insufficient, and cannot be construed as alleging that the contract was made by the dedefendant on behalf of the company, the words following the defendant's name being *descriptio personae.*   p. 594.

2. CRIMINAL LAW.—*Affidavit.*—*Bribery.*—*Sufficiency as Showing Knowledge.*—An affidavit for bribery, under §2425 Burns 1914, Acts 1905 p. 584, §519, which charged in substance that B was the duly elected and qualified trustee of a certain township, that as such trustee he entered into a contract with the defendant for the repair of a furnace in a high school building of the township, and that the defendant unlawfully, feloniously and corruptly paid B, trustee, a certain sum as a percentage, reward, etc., in violation of the statute, was not insufficient as against the objection that it failed to allege that the defendant knew that B was then a township trustee, since the allegations, when considered together, sufficiently show such fact.   p. 595.

3. CRIMINAL LAW.—*Evidence.*—*Sufficiency.*—*Review.*—Where, in a prosecution for bribery, the evidence was conflicting on the issue as to whether the defendant, on the alleged date of the bribery, had a contract with another who was acting in his official capacity as township trustee, the court on appeal will not disturb the jury's verdict of guilty, the presumption being that the trial court heard all the evidence and considered it sufficient to sustain the verdict.   p. 595.

4. CRIMINAL LAW.—*Bribery.*—*Evidence.*—*Proof of Payments in Other Counties.*—*Sufficiency.*—In a prosecution for bribery of a township trustee, under §2425 Burns 1914, Acts 1905 p. 584, §519, evidence of payments by the defendant to such trustee in

counties other than that of the venue would not be sufficient to' show payment of the bribe as charged in the county of the venue, but could be considered only as bearing on the purpose of payment in case the jury found from other evidence that such payment was made; and, where there was a sharp conflict in the evidence relating to the payment made in the county of the venue as charged, it was error to refuse an instruction limiting the application of the evidence as to the payments in the other counties.   pp. 600, 602.

5.   CRIMINAL LAW.—*Evidence of Other Crimes.*—*Purpose.*—In a criminal prosecution, proof of the commission of other criminal acts is admissible for the purpose of showing motive, criminal intent or guilty knowledge, where such motive, intent or knowledge is an essential ingredient of the crime charged.   p. 602.

From Clay Circuit Court; *George W. Brill,* Special Judge.

Prosecution by the State of Indiana against Earl L. Clevenger.   From a judgment of conviction, the defendant appeals.   *Reversed.*

*White & Haymond* and *Bernard M. Robinson,* for appellant.

*Ele Stansbury,* Attorney-General, *Dale F. Stansbury* and *W. L. Slinkard,* for the state.

LAIRY, J.—Appellant was charged by affidavit and convicted in the Clay Circuit Court of a crime defined by §2425 Burns 1914, Acts 1905 p. 584, §519.   The section cited defines two offenses.   The first part of the section makes it a felony for any person to pay any money or to deliver anything of value to any persons holding certain offices named therein, for the purpose of obtaining any contract for the construction of certain public buildings and other works of a public nature named therein, or for the performance of any work or the furnishing of any material to any state, county, town, or city, over which such person has any jurisdiction.   Appellant was charged and convicted of the offense defined by the last part of the section which pro-

vides in substance that any person who, having any such contract, shall pay or agree to pay to any of the officers or persons above named any money, percentage, reward, drawback, premium or profits on such contract, on conviction, shall be fined not less than $300 nor more than $5,000 and be imprisoned in the state prison not less than two years nor more than fourteen years, and be disfranchised and rendered incapable of holding any office of trust or profit for any determinate period.

The affidavit charged that, at the time mentioned therein, Carl A. Biller was the legally elected and acting township trustee of Posey township in Clay county, Indiana, and that on or about the —— day of June, 1917, as such trustee, Carl A. Biller entered into a contract with Earl L. Clevenger, agent of the Hoosier Warming and Ventilating Company, to repair the heating furnaces in the township high school building near Staunton, in said Posey township for said school township. It was further charged in the affidavit that on or about January 23, 1918, in the county of Clay and the State of Indiana, the said Earl L. Clevenger having said contract as aforesaid did then and there, unlawfully, feloniously and corruptly pay to said Carl A. Biller, trustee, as aforesaid, forty dollars lawful money of the United States of America as a percentage, reward, drawback, premium and profit on such contract, contrary to the form of the statute.

The sufficiency of the affidavit was questioned by a motion to quash and also by a motion in arrest of judgment, both of which motions were overruled.

The first objection urged to the affidavit is that it does not state with sufficient certainty that the contract on which the money was alleged to have been paid was a contract of the trustee with appellant.

1. The charge is that Carl A. Biller, as trustee, entered into the contract with Earl L. Clevenger, agent of

the Hoosier Warming and Ventilating Company. The words following the name of appellant in the last sentence are regarded as *descriptio personæ*, and cannot be construed to mean that appellant, as agent of the company named, made the contract for and on behalf of his principal. *State* v. *Simpson* (1905), 166 Ind. 211, 76 N. E. 544, 1005; *Allen* v. *State* (1876), 52 Ind. 486; *Weaver* v. *State* (1856), 8 Ind. 410. The affidavit is sufficient to charge that appellant entered into the contract described in his personal capacity, and that, while he had such contract, he paid to Biller, as trustee, forty dollars with the intent and purpose stated in the affidavit.

A further objection is made to the affidavit on the ground that it fails to charge that appellant knew, on January 23, 1918, the date on which the money 2. was alleged to have been paid, that Biller was trustee at that time. When all of the allegations of the affidavit are considered together, it becomes apparent that appellant must have known and did know the official character of Biller at the time the money was alleged to have been paid. The affidavit must be held to be sufficient. *State* v. *McDonald* (1886), 106 Ind. 233, 6 N. E. 607.

The other questions presented arise on the ruling of the trial court on the motion for a new trial. In regard to the sufficiency of the evidence to sustain the 3. verdict, appellant takes the position that all the evidence, without dispute, shows that the contract for repairing the heating furnaces upon which it is alleged the forty dollars was unlawfully paid was entered into between Biller, as trustee, and the Hoosier Warming and Ventilating Company, by its agent, Roy Alexander; and that appellant, at the time the money is alleged to have been paid, had no contract with the trustee in his official capacity within the meaning of the

statute. The testimony of Alexander and Biller strongly sustain appellant's position, but it cannot be said that there is a total want of evidence to sustain a finding by the jury that the contract was with appellant.  There is evidence to show that appellant was engaged in the plumbing business on his own account, and that a large amount of the material for making the repairs, which was furnished by W. H. Johnson and Sons Company, of Indianapolis, was shipped to appellant at Staunton, and was charged to his individual account, which he paid.  These circumstances were explained by evidence showing that he was, at the time, president and general manager of the Hoosier Warming and Ventilating Company, and that all goods sold by W. H. Johnson and Sons Company to that company were charged to appellant personally because he had credit with W. H. Johnson and Sons Company.  There is also evidence to show that checks given for labor performed in making the repairs were signed by appellant, and that the bill rendered for material and labor, and introduced in evidence, showed that the account was in favor of Earl L. Clevenger, plumber, and that the items therein were charged to C. A. Biller, trustee.  It was the province of the jury to consider the circumstances proved, and the explanations made in connection with the direct testimony of the witness bearing on the question, and decide whether appellant did or did not have the contract for repairing the furnaces as alleged in the affidavit.  The jury decided, and the trial judge, who heard the evidence and saw the witnesses, has decided that the evidence was sufficient to sustain the verdict on the point under consideration.  It will be presumed that the trial court considered all the evidence and weighed it in reaching the conclusion stated.  This court cannot weigh evidence. As the evidence is conflicting, the verdict cannot be set aside on the ground stated.

The main facts necessary to establish the guilt of the defendant were: (1) That he had a contract with Biller as trustee of Posey township for the furnishing of material and the performance of work for that township; (2) that while he had that contract he paid to Biller forty dollars or some other amount of money in Clay county, Indiana, within two years prior to the date on which that affidavit was filed, and (3) that the money so paid was a percentage, reward, drawback, premium or profit on such contract.

The witness Biller testified that appellant paid him forty dollars at his office in Staunton on January 22, 1918, at the time witness paid the balance on the heating repairs, and that appellant said that the balance due witness was ninety-five dollars, which he would pay when witness paid for the pump which had been ordered. This was the only evidence as to the payment of any money by appellant to Biller in Clay county, Indiana. Appellant denied making this payment, and further stated that on the day the settlement was made he and two other men, Limbaugh and Gordon, went from the Davis Hotel in Brazil, Indiana, directly to the office of Biller in Staunton; that it was a very cold day; that both these men went into the office with him and remained there during the time he was engaged in making the settlement and collecting the balance due on the heating repairs; and that, after his business was concluded, one of the other men showed some plans to Mr. Biller and talked over some contemplated repairs to the school building, after which they all left the office together. Both Gordon and Limbaugh were produced as witnesses at the trial, and they both corroborated appellant as to the facts just stated. They both further testified that, during the entire time appellant was in the office, they sat by the stove only four or five feet from the desk where the business was transacted, and

heard all that was said, and that nothing was said about the ninety-five dollars or any other amount remaining due to Biller, or that appellant would pay any balance due when the pump was paid for or at any other time. They both testified that no money was paid on that occasion. Mr. Peters, who drove the taxicab, also testified that he took these men, on the day mentioned, from Brazil to the office of Biller in Staunton. Biller testified that no one was present at the office with appellant when the settlement was made and the money paid. All the evidence shows that appellant, Gordon, and Limbaugh were in Staunton to see Biller on December 28, 1917, and took dinner at his house, and Biller testified that this was the only occasion that they were there together, while appellant and the other two witnesses testified that they came again together on January 22, 1918. The witness Peters testified that he brought them over on both trips. The jury by its verdict found that the money was unlawfully paid to Biller by appellant in Clay county, and there is some evidence to sustain the finding. If the jury reached this verdict from a consideration of competent evidence and under proper instructions, this court cannot disturb it.

The testimony of the witness Biller shows that, after the contract for the repairs to the heating plant was entered into, he met appellant in Terre Haute, Indiana, and had a conversation with him in which the repairs were discussed and in which appellant said that he would treat him right and give him ten per cent. of all the work, and asked him if that would be satisfactory, and that witness assented to that arrangement. Biller's evidence also shows that he later gave appellant an order for a pump on which contract appellant agreed to pay him fifty dollars, stating that this amount together with his percentage on the heating repairs would make the amount due him $200. About September 22, 1917, ac-

cording to the testimony of Biller, he gave appellant a check for something over $1,000 on the heating contract at his office in Staunton, at which time appellant said that he would get the check cashed and give him his commission. Some time in October, Biller testified he met appellant at Terre Haute, where appellant paid him sixty-five dollars while they were seated at a table in a barroom. There is also testimony to show that appellant was in Indianapolis on March 11, 1918, when his books were under examination by the state board of accounts, and that on that day he called appellant at Muncie, Indiana, by long distance from the phone in the office of the state board of accounts. After identifying appellant, Biller asked him if he could not pay him the balance of the ninety-five dollars due him on the job at Staunton. Biller testified to making this request and to the entire conversation held by telephone, and two members of the state board of accounts, who listened to the conversation at extension instruments, corroborate him as to the entire conversation. Appellant admitted in his testimony that he had a conversation over the telephone with Biller on the day mentioned, but he denied that any request was made by Biller for the payment of any balance due him on contract. Appellant stated that Biller told him over the wire that he was in trouble, and requested him to come to Indianapolis, and that he told Biller that he had business in Indianapolis and that he would come over the next morning on a traction car and meet him at the traction station. The evidence shows that they met at the traction station and went from there to a saloon, where appellant gave Biller fifteen dollars. This money was taken by Biller to the office of the state board of accounts, where it was sealed in an envelope. This envelope was produced at the trial and identified, and it was opened by a witness in the presence of the jury and the contents submitted to the jury for

inspection. Appellant by his testimony admitted that he met Biller and gave him fifteen dollars at a bar in Indianapolis, but stated that he let him have the money as a loan on his representation that he needed the money to pay his hotel bill

If fifteen dollars was paid Biller in Indianapolis, in violation of the provisions of the statute, that would be a distinct offense of which the courts of Marion

4. county would have jurisdiction, and the same may be said as to the payment of the sixty-five dollars, which Biller testified was paid to him in Vigo county. Appellant was charged with paying money to Biller in Clay county in violation of the statute, and it was incumbent on the state to establish a payment of money in that county in order to authorize a conviction. Clear proof that a payment of money was made in Marion county in violation of the statute could not be regarded as any evidence, either direct or circumstantial, that any money was paid by appellant to the prosecuting witness in Clay county as charged in the affidavit.

At the proper time appellant tendered instruction No. 5, which the court refused to give, and did not give any instruction covering the proposition stated therein. This ruling of the court was assigned as a cause for new trial and is presented for review on appeal. The instruction so tendered and refused is in the following words: "The court instructs the jury that it is the law of this state that a defendant may never be proven guilty of one offense by proving the commission of other crimes. Evidence has been introduced in this trial as to certain alleged payments which the state claims to have been made by the defendant, Earl L. Clevenger, to Carl A. Biller, at Terre Haute, and Indianapolis, Indiana, while said Biller was township trustee of Posey township, Clay county, Indiana, and while said Clevenger had a contract with the said Biller for the repair

of the heating plants in the high school building at Staunton, Indiana. The court instructs you that the defendant, Earl L. Clevenger, is upon trial on an affidavit charging but one crime, namely: That on or about the 23rd day of January, 1918, while having a contract with Biller, township trustee, to repair certain furnaces in the high school building at Staunton, Indiana, said defendant, Clevenger, paid Biller Forty ($40.00) Dollars as a percentage, reward, drawback, premium or profit on said contract. You are to bear in mind, gentlemen of the jury, that this is the sole and only crime with which the defendant is charged in this case and in arriving at a verdict in this case you are in nowise to determine or consider the guilt or innocence of the defendant with reference to the two other alleged payments that have been offered in evidence in this cause by the state. I further instruct you, gentlemen of the jury, that you are only permitted to consider the evidence with reference to these two transactions in case you first find as a fact beyond every reasonable doubt from the other evidence in the cause that said Clevenger had a contract with Biller as charged and that while having such contract, on or about the 23rd day of January, 1918, he paid Biller the Forty ($40.00) Dollars as alleged in the affidavit, then and then only are you permitted to consider the testimony with reference to the other two alleged payments, and in the consideration of them you are instructed that the evidence of such payments is to be weighed by you only for the purpose of determining the guilty knowledge, intent, motive or purpose of said Clevenger in paying Biller the said Forty ($40.00) Dollars if you find the same to have been paid as alleged beyond every reasonable doubt."

It has been frequently decided that proof of the commission of other criminal acts may be proved for the

purpose of showing a criminal purpose or intent or a guilty knowledge, in cases where such purpose, intent, or knowledge is an essential ingredient of the crime charged, and where the evidence of such other acts tends to establish such criminal motive, intent or such guilty knowledge. *Thomas* v. *State* (1885), 103 Ind. 419, 2 N. E. 808; *Rock* v. *State* (1916), 185 Ind. 51, 110 N. E. 212. In this case it was required to prove, not only that appellant paid the money to Biller as trustee in Clay county, but also that the money was paid as a percentage, reward, drawback, premium or profit. If the jury found from other evidence that appellant did pay the money to Biller as trustee, in Clay county, as charged in the affidavit, it might then properly consider evidence as to other payments by appellant to Biller, in Vigo county and in Marion county, as well as the circumstances attending such payment if shown. Such evidence could not be considered by the jury as lending any support to the fact that appellant paid the forty dollars to Biller in Clay county as charged in the affidavit, but could be considered only as bearing on the purpose with which the money was paid in case the jury found as a fact from other evidence that such payment was made.

In view of the evidence as set out, the failure of the court to limit the application of the evidence under consideration, as requested by appellant, was clearly prejudicial to his rights. Appellant may be guilty as charged in the affidavit; but, before he can be so adjudged, he has a right to have the facts on which guilt depends determined by a jury under proper instructions as to the law. As appears from the preceding statement, there was a sharp conflict in the evidence relating to the payment of the forty dollars at Staunton as charged in the affidavit. This court can-

not say that this fact is so clearly and conclusively shown by the other evidence in the case as to render harmless the error of the court in refusing to give the instruction quoted.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.

NOTE.—Reported in 125 N. E. 41. See under (5) 62 L. R. A. 193, 12 Cyc 405, 40 Cyc 2769.