Robert GOLDEN, Appellant,

v.

STATE of Indiana, Appellee.

No. 484S149.

Supreme Court of Indiana.

Nov. 19, 1985.

Susan K. Carpenter, Public Defender, M.E. Tuke, Deputy Public Defender, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Latrialle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-Appellant Robert Golden was convicted by a jury in the DuBois County Circuit Court of the crime of forgery, a class C felony, and was also found by that jury to be an habitual offender. The trial judge subsequently sentenced him to a term of five years on the forgery conviction, enhanced by thirty years for the habitual offender finding for a total term of thirty-five years.

The six issues presented by Appellant for review in this direct appeal are as follows:

1. errors committed in final instructions to the jury;

2. errors committed in admission of State's exhibits into evidence;

3. sufficiency of the evidence;

4. error in permitting exhibits to be taken into the jury room during deliberation;

5. errors in permitting certain exhibits into evidence during the habitual offender phase of the trial; and

6. ineffective assistance of counsel.

The evidence showed that Nellie Kellems, a seventy-five year old householder, contracted with Appellant, a neighbor, for him to repair the roof and chimney of Kellem's house and to paint some of the trim of the house. The total cost of the work was to be $1,600.00. Kellems paid Appellant by check for half of the agreed amount ($800.00) on March 3, 1983. On March 9, 1983 Kellems paid him $400.00 by check and on March 14, 1983 she paid him $300.00 by check. On March 28, 1983 and March 30, 1983 Kellems paid Appellant with two checks. These two checks are the subject of the forgery charges in the instant cause. Each of these checks was to be for the amount of $50.00 to pay the debt in full. Kellems permitted Appellant to fill out the checks except for her signature. Each check was to be made out for $50.00. However, when they were returned from the bank Kellems discovered that each check was altered to show the amount of $500.00. Both checks showed Appellant as the payee and endorser. Kellems testified the understanding was each check was to

be made for $50.00 and she was to sign them. She does not remember whether she signed the checks in blank and then had them filled out by Appellant in her presence or if she signed them after they were filled out. She said that it was definitely understood, however, that each check was to be for $50.00 and not $500.00.

## I

■ Appellant first claims the trial court erred in giving the State's tendered Instruction Number 2 on the subject of reasonable doubt. He claims the instruction is an incorrect statement of the law and that the subject matter was covered adequately by other instructions. Appellant's claim is based on the fact that Instruction Number 2 included in its language, "[T]he mere possibility that the Defendant may be innocent does not raise a reasonable doubt." The instruction in its entirety was a definition of reasonable doubt which advised the jury that in order to convict Appellant each juror must be satisfied of the guilt of the accused beyond a reasonable doubt. It then further instructed them they should not indulge in purely speculative doubts, and that the mere possibility that Appellant may be innocent does not raise a reasonable doubt. The trial court also gave Pattern Instruction 1.21 in the preliminary instructions to further define what a reasonable doubt is. In final instructions the court gave Appellant's tendered instructions that advised the jury: 1) Appellant was presumed innocent throughout the trial until the State carried its burden of showing him guilty beyond a reasonable doubt; 2) all reasonable doubts were to be resolved in favor of Appellant's innocence; 3) there was no burden on Appellant to prove his innocence, rather, the duty was on the State to prove his guilt beyond a reasonable doubt; and 4) proof beyond a reasonable doubt requires more evidence than proof by a preponderance of the evidence.

We have held it is proper to tell a jury in the context of an instruction that a mere possibility that a defendant may be innocent does not raise a reasonable doubt, when the instruction is juxtaposed with an instruction charging the jury not to act upon speculation. *Choate v. State* (1984), Ind., 462 N.E.2d 1037, 1041; *Harrison v. State* (1978), 269 Ind. 677, 686, 382 N.E.2d 920, 926, *cert. denied* (1979) 441 U.S. 912, 99 S.Ct. 2010, 60 L.Ed.2d 384; *Carter v. State* (1977), 266 Ind. 196, 201, 361 N.E.2d 1208, 1211, *cert. denied* (1977), 434 U.S. 866, 98 S.Ct. 202, 54 L.Ed.2d 142. These provisions were contained within the same instruction here. Furthermore, all of the instructions given by the trial court on the subject of reasonable doubt were such that they were not unduly repetitious of each other and fully advised the jury of the definition of reasonable doubt and the State's burden of proof.

■ Appellant also claims the trial court erred in giving the State's tendered Instructions 5 and 6 over his objections because the subject matter of these instructions was covered by other instructions, and the repetition had the effect of emphasizing one aspect of the evidence over others. State's tendered Instructions 5 and 6 were on the subject of the definition of forgery. Instruction 5 told the jury that where authority is given one to fill in blanks in an instrument, a filling of such blanks in a manner other than authorized constitutes forgery where the other elements of forgery are present. Instruction 6 told the jury that in order to constitute forgery there must be a making of a false instrument for the purpose of creating another's liability with fraudulent intent to injure him. It further stated such a forged instrument may be made in various ways such as by creating it entirely, by editing or adding to it some of its essential terms, or by procuring the signature of a person who had no intention of signing it. The mere fact that these final instructions may be to some degree repetitious or cumulative of other instructions does not necessarily render them improper or prejudicial unless there is a showing of undue emphasis of a particular point or an argumentative presentation of the applicable rules of law.

*Coleman v. State* (1984), Ind., 465 N.E.2d 1130, 1133–1134; *Pulliam v. State* (1976), 264 Ind. 381, 394, 345 N.E.2d 229, 238–239, *reh. denied* (1976); *Johnson v. State* (1972), 258 Ind. 683, 687, 284 N.E.2d 517, 519. In addition to State's tendered Instructions 5 and 6, the trial court gave three additional instructions to the jury on the elements of forgery. Instruction Number 4 defined the term, "make." One of the preliminary instructions, Pattern Jury Instruction 1.09, simply set out the statute defining the offense of forgery. Instruction Number 3 further explained the crime of forgery as defined in the statute by putting the terms in laymen's language, so as to be better understood by members of the jury. None of the instructions on this subject are repetitive of any other and all of them together give a clear understanding to the jury of the definition of the crime of forgery. In *Pulliam,* this Court held that no error occurs when a trial court includes both an instruction setting forth the statutory language and an instruction explaining the elements of the crime in terms more understandable to laymen. *Pulliam,* (1976) 264 Ind. at 394, 345 N.E.2d at 238–239. Justice Givan wrote for a unanimous court:

> "Certainly all phases of the law cannot be covered in a single instruction. By their very nature there is a certain amount of repetition in the instructions when taken as a whole. It is only when instructions are so repetitious as to place an undue emphasis on a particular point that they become improper." *Johnson* (1982), 258 Ind. at 687, 284 N.E.2d at 519.

There is no merit to Appellant's contention that any of these instructions were improper and merit a reversal.

## II

Appellant claims the trial court erred in admitting into evidence State's Exhibits 1, 2, 3, 4, and 5. These exhibits were five checks that were to pay Appellant $1,600.00 by Mrs. Kellems for work he did on her home and premises. The checks were received into evidence through the testimony of Mrs. Kellems. She testified that she signed the checks but had Appellant fill them out for designated amounts. She authorized Appellant to make each check for a particular amount and then delivered it to him. Three of the checks delivered in that manner totalled $1,500.00; there was an amount of $100.00 remaining when Mrs. Kellems testified she authorized Appellant to write check number 357 and check number 358 for $50.00 each. She did not remember if she signed the checks before Appellant partially filled them out or signed them after they were completed, but she stated each was to be made for the amount of $50.00. One of them was marked "Paid" to indicate the total contract price of $1,600.00 had been paid. When the checks were returned to Mrs. Kellems from the bank they were each made out for an amount of $500.00 and the balance in Mrs. Kellems' account was reduced by $1,000.00 rather than $100.00. Mrs. Kellems identified these checks as the ones that were written by Appellant, signed by her, delivered to Appellant, and returned to her by the bank in the condition she presented them in court. Appellant's objection to the admission of these exhibits is that a proper foundation was not laid for their admission into evidence. At trial Appellant objected to Exhibit 1 on the grounds that Mrs. Kellems could not identify the red markings on the front and the markings on the back of the check, clearly recognizable as markings put there by the bank during its processing of the checks. As to State's Exhibits 2 through 5, Appellant objected:

> "I would object to state's exhibit 2 through 5 for any other purpose other than to show that those were the checks that Mrs. Kellems signed and according to her testimony, signed and gave to Mr. Golden. I'd object to them at this time to be used for any other purpose other than that."

We see no merit to Appellant's contention at this point that no proper foundation was present for the admission of these exhibits. To be admissible into evidence, an exhibit must be relevant and material. It must be

shown that the exhibit is authentic and also that it bear some relevance to this defendant and the transaction from which the criminal charge arises. *Hooper v. State* (1983), Ind., 443 N.E.2d 822, 825; *Accord, Fletcher v. State* (1975), 253 Ind. 468, 471, 255 N.E.2d 217, 218–219. All elements of the crime necessary for the State's burden to be accomplished need not be contained in one exhibit for it to be admissible. The evidence showed that Appellant did indeed fill in all of these checks, including his own name as payee, and did endorse the checks. The fact that Mrs. Kellems could not identify the markings on the check put there by the bank during its processing did not make them inadmissible. She stated those marks were not on the checks when she delivered them to Appellant, and they were on the checks when the bank returned them to her. She testified that these were the checks she signed and delivered to Appellant with instructions for them to contain certain amounts and that they were the same checks returned to her from her bank in the condition in which she presented them. This sufficiently tied these exhibits to Appellant and the commission of the crime for them to be admissible into evidence.

### III

Appellant contends there was insufficient evidence to justify his two convictions of forgery. In reviewing such a claim, of course, we do not review the evidence or determine its credibility. *Harris v. State* (1985), Ind., 480 N.E.2d 932, 937.

■ Appellant first argues the State's proof was at variance with its charging information. This contention is based on the claim that the information charges Appellant with both making and uttering the checks in question. Appellant claims these are each separate charges, and further, apparently is claiming the State proved only the making and not the uttering. We first note there was no complaint made by Appellant as to the form of the complaint at trial. He filed no motion to quash the information on the basis of any irregulari-

ties contained in it and went to trial as charged therein. Appellant's claim now is that this variance was prejudicial to him and subjects him to double-jeopardy. We fail to see merit in this claim. This Court stated in *Manna v. State* (1982), Ind., 440 N.E.2d 473, 475:

"Consistency between the allegations charged and the proof adduced is required out of deference for the accused's constitutional right to be informed of the nature and cause of the accusation in sufficient detail to enable him to prepare his defense, to protect him in the event of double-jeopardy, and to define the issues so that the court will be able to determine what evidence is admissible and to pronounce judgment."

Appellant makes no showing here how he was prejudiced or in what manner he was subjected to the risk of double-jeopardy. Since the information referred to both making and uttering and the evidence clearly showed Appellant was prosecuted on the particular checks and transactions identified in the cause, he faces no risk of double-jeopardy. Ind.Code § 35–43–5–2 (West 1978).

■ Appellant further claims Nellie Kellems tended to be confused and inconsistent in some of the details of the transactions between herself and Appellant which he claims amounted to an insufficiency of the evidence. He offers examples of other possibilities the jurors could conclude from her testimony, such as the fact that someone else might have endorsed his name on the checks and passed them, or that there was additional work done by him for Nellie Kellems that justified the increased amount from $50.00 to $500.00. These are merely arguments that question the credibility of the evidence. The jury heard all of the evidence and made its determination based on it. That evidence sufficiently presented facts which justified the jury in arriving at the verdicts it did. We therefore see no error in this issue.

### IV

■ It is Appellant's contention that the trial court erred in permitting the jury to

take exhibits to the jury room during their deliberations. His objection is particularly directed toward the checks involved and the check register. He concedes it is proper for the trial judge to permit the taking of exhibits into the jury room pursuant to our holdings in *Torres v. State* (1982), Ind., 442 N.E.2d 1021, 1025–1026; and *Thomas v. State* (1972), 259 Ind. 537, 540, 289 N.E.2d 508, 509, *reh. denied* (1973). He claims these particular exhibits should not have been sent to the jury because they did not comply with the standards adopted by us in *Thomas* and enumerated in Section 5.1 of the Standards Relating to Trial by Jury (ABA Project on Standards for Criminal Justice). One of the considerations set out in those standards is whether the material may be subjected to improper use by the jury. Appellant claims these exhibits would be subjected to improper use by the jury since the jurors virtually would become experts in determining whether the signature of Appellant as the payee of the check and the endorser were the same. He is concerned also about the extraneous markings on the checks that clearly appear to be those put on by the bank, although as he insists, there was no evidence that such was the case. It is the State's contention that the evidence was clear and direct that the checks were negotiated between Appellant and Nellie Kellems. Her testimony was that in her presence Appellant filled in the checks as she directed they were to be filled in and they were delivered to him. It is therefore proper and, in fact, necessary for the jury to look at the checks and determine whether all of the writing appeared to be done by the same person. Notably, it is undisputed that the first of these checks delivered were made out by Appellant and cashed by him. The two final checks in question were carried out in the same manner and were in amounts that would give Appellant the final $100.00 of the $1,600.00 contract. One of the checks carries the notation, "Paid in full." There was no evidence that anyone else had anything to do with these checks. They demonstrated corroboration of Nellie Kellem's testimony that the checks were delivered to

Appellant, endorsed by him, and went directly to her bank and from there back to her. Under these facts and circumstances, we agree with the State that it was not unreasonable for the jury to view all of these checks. Appellant fails to do more than suggest an improper use the jury might make of these exhibits, and we fail to find any merit to such a suggestion. We therefore see no reversible error on this issue.

### V

Appellant further claims that the trial court erred in refusing to reject parts of State's Exhibits 8, 10, and 11 offered during the habitual offender phase of the case. He further claims that Exhibits 8, 10, and 11 were not properly certified. The State's Exhibit 8 contained documents intended to prove that Appellant had been convicted of theft in 1980. The records showed that he was also convicted of criminal confinement, although that conviction was not presented by the state for purposes of the habitual offender finding. Similarly, in Exhibit 11 documentation was presented to show Appellant was convicted of entering to commit a felony, wherein he originally had been charged with kidnapping but entered a plea of guilty to the reduced charge pursuant to a plea agreement. Appellant claims he was prejudiced before the jury by having the reference in these exhibits to the criminal confinement and the kidnapping charges. Because of the nature of these charges, which he characterizes as painting him as a highwayman, Appellant claims that the jury would be prejudiced and more likely would find him to be an habitual offender. We previously have held that proof of more than two felony convictions in a habitual offender proceeding is mere surplusage. *Hall v. State* (1980), 273 Ind. 507, 514, 405 N.E.2d 530, 535, *reh. denied* (1980). It also is true that evidence relative to proof of the crime charged is admissible even if that evidence also tends to prove the accused's commission of an uncharged crime. *McManus v. State* (1982), Ind., 433 N.E.2d 775, 778.

Furthermore, even the erroneous admission of evidence will not result in reversal of the judgment if the evidence supporting the jury's findings is substantial or overwhelming. *Howell v. State* (1980), 274 Ind. 490, 493, 413 N.E.2d 225, 226–227, *reh. denied* (1981). Since Exhibits 8 and 11 clearly showed Appellant previously was convicted of two felonies, there was no reversible error in Exhibits 8 and 11 indicating he was charged and convicted of other felonies.

 Appellant further claims that Exhibits 8, 10, and 11 were not properly certified. Examination of the record indicates he did not make this objection to Exhibit 8 when it was offered and admitted into evidence. A party may not object to the admission of evidence on one basis at trial and on a different basis on appeal. Error, if any, with regard to that exhibit is waived if he does so. *Phelan v. State* (1980), 273 Ind. 542, 546, 406 N.E.2d 237, 239.

 Although it appears that Exhibits 8, 10, and 11 were properly qualified pursuant to Ind.R.Tr.P. 44(A)(1), Appellant claims that said exhibits are not complete records since docket sheets were not included. He also claims that certification was that the documents were "true and correct" as opposed to being certified "true and complete." We have held documents admissible where they were from a court and certified by a representative of the court even though the documents did not conform verbatim with the language of the prevailing statute. *Chicago & S.E.R. Company v. Grantham* (1905), 165 Ind. 279, 288, 75 N.E. 265, 268; *Anderson v. Ackerman* (1883), 88 Ind. 481, 491. The certification in the present case used language identical to that used in *Anderson,* wherein we held the records properly certified. Likewise, we hold the present exhibits sufficiently certified.

## VI

 Finally, Appellant claims he had ineffective assistance of counsel at trial. The only claim Appellant makes demonstrating the ineffectiveness of his counsel is that counsel failed to effectively and competently cross-examine Nellie Kellems and to impeach her credibility. Nellie Kellems was the major witness for the state. Appellant points out in detail the testimony of Nellie Kellems, indicating that it could be determined there were places where she was confused and should have been pressed further by counsel to show her confusion and destroy the credibility of her total testimony.

Our standards used in testing this contention have been very clearly stated. Appellant must establish counsel's performance was deficient and that such deficiency prejudiced his case. *Elliott v. State* (1984), Ind., 465 N.E.2d 707. Appellant must show that in light of the circumstances the identified acts or omissions of counsel were outside the wide range of professionally competent assistance consistent with elaborated prevailing professional norms. He must further show there is a reasonable probability but for counsel's unprofessional error the result of the proceeding would have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 692–693, U.S. *reh. denied* (1984), —— U.S. ——, 104 S.Ct. 3562, 82 L.Ed.2d 864; *Bieghler v. State* (1985), Ind., 481 N.E.2d 78, 96, *reh. denied* (1985); *Elliott,* Ind., 465 N.E.2d at 710.

The record shows that defense counsel did cross-examine Nellie Kellems at length on all of her testimony. Nellie Kellems was an elderly lady and it is apparent that defense counsel had in mind that should he appear to attack her too severely on peripheral issues the result would be to raise sympathy for the witness and prejudice to Appellant. This was a strategy determination defense counsel had to make. Defense counsel did thoroughly cross-examine witness Kellems in regard to the transactions between herself and Appellant and in regard to the exhibits sponsored by her. The entire record shows that Appellant was very competently and effectively represented and he points to nothing that would justify reversal on this issue.

Finding no error we affirm the trial court.

GIVAN, C.J., and DeBRULER, PRENTICE and SHEPARD, JJ., concur.